**RICK LEVIN & ASSOCIATES, INC.**                                                                                                    **EXHIBIT B**
**EXCLUSIVE AGREEMENT FOR AUCTIONEERING SERVICES OF REAL PROPERTY**

**DEFINITIONS:**

| | |
|---|---|
| **Auctioneer:** | Rick Levin & Associates, Inc., an Illinois corporation |
| | 980 N. Michigan Ave., Suite 1400, Chicago, IL 60611 |
| | (312) 440-2000 |
| **Seller:** | David Leibowitz, Trustee of the Thomas Estate |
| **Seller's Address:** | 53 W. Jackson Boulevard, Suite 1115, Chicago, IL 60604 |
| **Seller's Telephone Number:** | **Work**: 312 360 1501    **Cell**:    **Fax**:    **E-Mail**: dleibowitz@lakelaw.com |
| **Property** (legal description as defined in a title commitment dated after this Agreement): | 6926 S. Prairie Ave, Chicago, IL 60637 |
| **Online Auction Date:** | Wednesday, March 14, 2018 |
| **Marketing Fee:** | $ 5,000 Due at the closing of the sale |

This Agreement for Real Property Auctioneering Services ("**Agreement**") is entered into by and between Seller and Auctioneer.

### RECITALS

A. Auctioneer is engaged in the business of selling real property at auction, and has an established place of business from which to perform real property auction marketing services.

B. Seller is the owner of the Property in the State of Illinois; which Seller wishes to sell at an auction.

C. Seller wishes to retain Auctioneer as the exclusive auctioneer for purposes of marketing and auctioning the Property, and Auctioneer is desirous of same.

NOW THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

### AGREEMENT

1. **Auctioneer's Duties**

    1.1. Seller hereby grants to Auctioneer the sole and exclusive right to offer the Property for sale, on the terms set forth herein. Said right shall commence at 12:00 AM on the date of this Agreement and shall terminate ninety (90) days following the actual date of the auction. The last day of this period shall be referred to as the "**Termination Date**." The exclusive right herein granted shall be irrevocable until the Termination Date, unless (1) the Termination Date is mutually rescinded, or extended, by the parties hereto or (2) if either party breaches any term of this Agreement, the non-breaching party shall have the right and option to terminate this Agreement.

    1.2. Auctioneer shall have the exclusive right to sell the Property to any registered prospective buyer for a period of six (6) months (the "**Post-Auction Period**") commencing on the Auction Date. For purposes of this Agreement, the term "**Registered Prospective Buyer**" shall mean all prospective purchasers who contacted, or was contact by, Auctioneer regarding the Property in any manner during the marketing of the Property and are named in a list or lists which shall be submitted to Seller at the expiration of the Post-Auction Period. Notwithstanding anything contained herein to the contrary, no commission will be due and owing pursuant to the terms of this Agreement if (1) the property is residential; and (2) after the Termination Date, a valid written listing is entered into with another licensed real estate broker.

    1.3. **Designated Agent.** Auctioneer designates Rick Levin ("**Seller's Designated Agent**"), a sales associate affiliated with Auctioneer as the only legal agent of the Seller. Auctioneer reserves the right to name additional designated agents when in Auctioneer's discretion it is necessary. If additional designated agents are named, Seller shall be informed in writing within a reasonable time. Seller acknowledges that Seller's Designated Agent may from time to time have another sales associate, who is not an agent of the Seller, sit an open house of Seller's property or provide similar support in the marketing of Seller's property. Seller understands and agrees that this agreement is a contract for Auctioneer to market Seller's property and that Seller's Designated Agent(s) is (are) the only legal agent(s) of Seller. Seller's Designated Agent will be primarily responsible for the direct marketing and sale of the Property. Seller has been informed that potential buyers may elect to employ the services of a licensed real estate broker or sales associate as their own agent (buyer's agent).

    1.4. **Dual Agent Consent.** The undersigned Rick Levin ("**Licensee**"), may undertake a dual representation (represent both the seller or landlord and the buyer or tenant) for sale or lease of the Property. The undersigned Seller acknowledges they were informed of the possibility of this type of representation. **BEFORE SIGNING THIS DOCUMENT PLEASE READ THE FOLLOWING:** Representing more than one party to a transaction presents a conflict of interest since both clients may rely upon Licensee's advice and the client's respective interest may be adverse to each other. Licensee will undertake this representation only with the written consent of ALL clients in the transaction. Any agreement between the clients as to a final contract price and other terms is a result of negotiations between the clients acting in their own best interests and on their own behalf. You acknowledge that Licensee has explained the implications of dual representation, including the risks involved, and understand that you have been advised to seek independent advice from your advisors or attorneys before signing any documents in this transaction.

    **WHAT A LICENSEE CAN DO FOR CLIENTS WHEN ACTING AS DUAL AGENT**
    1. Treat all clients honestly.
    2. Provide information about the property to the buyer or tenant.
    3. Disclose all latent material defects in the property that are known to Licensee.
    4. Disclose financial qualification of the buyer or tenant to the seller or landlord.
    5. Explain real estate terms.
    6. Help the buyer or tenant to arrange for property inspections.
    7. Explain closing costs and procedures.
    8. Help the buyer compare financing alternatives.
    9. Provide information about comparable properties that have been sold so both clients may make educated decisions on what price to accept or offer.

    **WHAT LICENSEE CANNOT DISCLOSE TO CLIENTS WHEN ACTING AS A DUAL AGENT**
    1. Confidential information that Licensee may know about the clients, without that client's permission.
    2. The price the seller or landlord will take other than the listing price without permission of the seller or landlord.
    3. The price buyer or tenant is willing to pay without permission of the buyer or tenant.
    4. A recommended or suggested price the buyer or tenant should offer.
    5. A recommended or suggested price the seller or landlord should counter with or accept.

    If either client is uncomfortable with this disclosure and dual representation, please let Licensee know. You are not required to sign this document unless you want to allow the Licensee to proceed as a Dual Agent in this transaction. By signing below, you acknowledge that you have read and understand this form and voluntarily consent to the Licensee acting as a Dual Agent (that is, to represent BOTH the seller or landlord and the buyer or tenant) should that become necessary.

    **SELLER - INITIAL HERE ⇨** _____/_____

    1.5. Seller understands and agrees that Auctioneer may from time to time represent or assist other sellers who may be interested in selling property to buyers with whom Auctioneer has a buyer agency contract or with whom Auctioneer is working as a customer. The Seller consents to Auctioneer's representation of such other sellers before, during and after the expiration of this Agreement and expressly waives any claims, including, but not limited to, breach of fiduciary duty or breach of contract based solely upon Auctioneer's representation or assistance of other sellers who may be interested in selling property to buyers with whom Auctioneer has a buyer agency contract or with whom Auctioneer is working as a customer.

    1.6. Seller agrees that Auctioneer may enter the Property at reasonable times for the purpose of showing it to prospective buyers before, at or after the auction and the Auctioneer shall have the right to place auction signs on the Property, or as near the Property as possible, for the purpose of notifying the public and other parties as to the conduct of the auction. Auctioneer shall not be charged with custody or control of the Property at any time, including during showings of the Property, nor shall Auctioneer have any duty or obligation with respect to the management, maintenance, upkeep or repair of the Property nor shall Auctioneer be responsible for the removal of any auction signage placed at or near the property.

    1.7. Auctioneer agrees to:

       1.7.1. acquire and collect information about the Property, however Auctioneer shall not be required to independently investigate the Property or confirm information Seller or its agent provides Auctioneer;

       1.7.2. advertise it for auction;

       1.7.3. accept delivery of and present to the Seller offers and counter offers to buy, sell, or lease the Seller's property;

       1.7.4. assist the Seller in developing, communicating, negotiating, and presenting offers, and notices that relate to the offers and counteroffers until a lease or purchase agreement is signed and all contingencies are satisfied or waived;

       1.7.5. answers the Seller's questions relating to offers, counteroffers notices and contingencies;

       1.7.6. make an earnest and best effort to sell the Property on the terms as set forth herein.

    1.8. Auctioneer is hereby authorized by Seller, and Auctioneer shall have the sole and absolute right to market the Property in accordance with the terms of this Agreement, including but not limited to design and placement of advertisements, signage, brochures, any Internet homepage and/or other sales materials. Auctioneer shall not be responsible for the removal of any auction signage placed at or near the property.

    1.9. Auctioneer reserves the right at its sole discretion to add the Property to other property in a multiple owner auction sale.

    1.10. Auctioneer shall hold the earnest money, as escrow agent, for all contracts to purchase the Property during the terms of this Agreement, including, but not limited to, pre-auction and post-auction sales, if any.

    1.11. Both Seller and Auctioneer agree that Auctioneer's relationship with Seller is that of an independent contractor and not an employee. Auctioneer retains the right to determine the procedures necessary to conduct the auction and implement said procedures in any manner Auctioneer deems appropriate, subject to the terms of this Agreement.

2. **Auction.**

    2.1. Auctioneer shall conduct one competitive online auction of the Properties at which Auctioneer shall attempt to procure a purchaser ("**High Bidder**") for the Property.

    2.2. The auction shall be conducted with reserve, subject to bankruptcy court approval. The Seller's attorney will have pre-approved said purchase agreement prior to Auctioneer distributing same to potential bidders. The successful High Bidder(s) shall deposit a non-refundable earnest money payment in cash or cashier's check in the amount of ten percent (10%) of the total purchase price along with their Sealed Bid Submission.

    2.3. A Buyer's Premium Fee ("**Premium**") shall be defined as Five percent (5%) of the final bid or offer ("**High Bid**") received for the Property. At the auction, the Premium shall be added to the High Bid, and this total shall be the total purchase price inserted in the Real Estate Contract. Notwithstanding anything contained herein to the contrary, for offers for the Property accepted by Seller prior to the auction or during the Post-Auction Period: (A) if no Premium is inserted on the face of the Real Estate Contract, it shall be defined as Five percent (5%) of the total purchase price set forth in the Real Estate Contract; and (B) if no High Bid is specified on the face of the Real Estate Contract, the High Bid shall be defined as the total purchase price in said offer

    2.4. Upon signature acceptance of an offer, a contract between High Bidder and Seller ("**Real Estate Contract**") shall exist. It is agreed by the parties hereto that Auctioneer does not guarantee performance by any High Bidder and, therefore, is not responsible if, for any reason, any High Bidder fails to perform their obligations and duties pursuant to the Real Estate Contract.

    2.5. All sales will be for cash or cashier's check, and closing shall be approximately forty-five (45) days after the Auction Date, unless otherwise agreed to by the parties to the Real Estate Contract.

    2.6. Seller, or Seller's attorney, and Auctioneer shall approve the preprinted form of the written offer. The offer procured by Auctioneer will be sold subject to the terms, conditions, representations and warranties set forth in the Real Estate Contract.

    2.7. Chicago Title Insurance Company shall be designated as escrow closing agent.

3. **Seller's Duties**

    3.1. Seller shall reasonably cooperate with Auctioneer to achieve a sale of the Property as set forth herein, including, but not limited to:

       3.1.1. Providing Auctioneer with documentation and information regarding the Property and any improvements thereon, including, but not limited to, existing leases, financing, surveys and other matters Auctioneer requests from time to time. Seller hereby warrants to Auctioneer the accuracy and completion of all such information and documentation.

       3.1.2. Giving Auctioneer current evidence of Seller's good and marketable title to the Property.

       3.1.3. Executing a sales agreement for every Property sold subject to seller confirmation (which Seller accepts in accordance with the terms set forth in this Agreement), with such terms and conditions as set forth herein, prepared in accordance with local custom, and providing for customary prorations, evidence of marketable title, and delivery of possession at closing.

    3.2. Seller hereby represents and warrants to Auctioneer that Seller is the legal owner of the Property and the same is subject to no leases, other than those provided to Auctioneer upon execution of this Agreement, or contracts to purchase.

    3.3. Seller hereby represents and warrants to Auctioneer that Seller, and the person executing this Agreement on behalf of Seller if Seller is not an individual, has the authority, right and power to enter this Agreement.

    3.4. Seller hereby represents and warrants to Auctioneer that Seller has the authority, right and power to sell the Property in accordance with the terms and conditions set forth herein and to convey title to the Property to any duly authorized buyer.

    3.5. Seller hereby represents and warrants to Auctioneer that Seller has no knowledge of any notices, suits or judgments by any governmental authority relating to violations at the Property of any governmental ordinance, code or law establishing zoning, construction, plumbing, heating, electrical, fire prevention, air pollution, sanitation or other health, environmental or safety standards applicable thereto. Seller agrees to give notice to Auctioneer in the event of receipt of any such notice prior to the Auction Date.

    3.6. Seller hereby represents and warrants to Auctioneer that Seller has not received notice of:

       3.6.1. any pending or contemplated foreclosure of the Property or improvements thereon;

       3.6.2. violation of condominium declarations, if any, or

       3.6.3. any special assessment pending or contemplated regarding the Property or improvements thereon.

       3.6.4. Seller agrees to notify Auctioneer in writing if Seller receives notice of any of the foregoing prior to the Auction Date.

    3.7. Seller hereby represents and warrants to Auctioneer that Seller has no listing agreement of any kind incorporating the Property in whole or in part with any other party.

    3.8. Seller shall be responsible for all fees, charges, costs, other expenses or penalties, if any, charged by the holder of any mortgage or trust deed of record regarding the sale of the Property. Furthermore, Seller has consent from any secured lender authorizing the sale of the Property and agreements are in place with said lender for the release of any security agreements. Upon request from Auctioneer, Seller agrees to provide Auctioneer with documentation from any secured lender which indicates (1) Seller has that lender's consent; (2) said lender authorizes the sale of the Property; and (3) that agreements are in place with said lender for the release of any security agreements. If Seller fails to provide Auctioneer with the requested documentation from any secured lender, Auctioneer shall have the right to declare Seller in material breach of this Agreement and the provisions of paragraph 4.1.6. shall become effective.

    3.9. Seller hereby indemnifies Auctioneer for any claims brought by third parties based on Seller's failure to disclose the existence of any security agreements or secured claims against the Property, such indemnity to include reimbursement for any attorneys' fees and costs incurred by Auctioneer in defense of any such claim.

3.10. Seller hereby represents and warrants to Auctioneer that Seller shall refer to Auctioneer all inquiries on, and offers it receives to purchase, the Property during the term of this Agreement, and Seller shall promptly inform Auctioneer of all such inquiries and offers. Seller agrees to conduct all negotiations through Auctioneer. Seller agrees not to disclose to any third parties the terms of any offers received during the term of this Agreement without first obtaining Auctioneer's express consent. Seller's failure to abide by any term set forth in this paragraph may, at Auctioneer's sole option, be deemed a material breach of this Agreement, and subject Seller to the terms of Paragraph 4.1.6.

3.11. Seller acknowledges that Auctioneer is not obligated to and has not made any independent investigation of the condition of the Property including, but not limited to, the physical condition of the structure (exterior or interior), the fixtures, personal property and equipment therein, if any, or any environmental matters with respect thereto (collectively the "**Physical Condition**"). All investigations, reports and information with respect to the Physical Condition shall be prepared by or for the Seller and shall be furnished by Auctioneer to prospective purchasers on behalf of Seller, who shall be solely responsible for all such information. Auctioneer has the right to insert in the Real Estate Contract an acknowledgment by the purchaser to the foregoing. Seller shall indemnify, defend and hold Auctioneer harmless against any claim, demand or lawsuit with respect to the Physical Condition of the Property, including, but not limited to, claims and suits for personal injury, death, property damage or otherwise actually or allegedly resulting from the condition or repair of the Property or any part thereof, including all costs, expenses, and damages, including reasonable attorneys' fees, related to any claims, suits, or judgments incidental to the foregoing. Seller hereby indemnifies and holds Auctioneer and Auctioneer's agents harmless, from any and all claims, disputes, litigation, judgments, costs and legal fees from the defense of same, including reasonable attorney's fees and costs arising from the misrepresentations by the Seller or other incorrect information supplied by the Seller to Auctioneer or any third party.

3.12. If the property is other than a condominium or a cooperative, then prior to closing, Seller shall furnish a survey by a licensed land surveyor dated not more than six (6) months prior to date of closing of the Real Estate Contract showing the present location of all improvements. If Purchaser or Purchaser's mortgagee desires a more recent or extensive survey, same shall be obtained at Purchaser's expense. If the Property is a condominium, then no later than 15 days from the date hereof Seller shall furnish to Auctioneer a complete set of condominium documents, to include declaration, bylaws, and if available, a survey. If the property is a cooperative, then, no later than 15 days from the date hereof, Seller shall furnish to Auctioneer a complete set of cooperative documents, to include the proprietary lease or trust agreement, the bylaws, and if available, a survey.

3.13. If the Property is a townhouse or condominium and dependent upon an association's governing documents, either upon execution of this Agreement or upon acceptance of an offer to Purchaser by Seller, Seller shall promptly notify the appropriate representative of the condominium association or any affiliated organization of the contemplated transaction. Seller shall furnish a statement to Purchaser from an authorized officer or agent of the condominium association certifying payment of assessments for condominium common expenses, and if applicable, proof of waiver, or termination of any right of first refusal or general option contained in the declaration of condominium together with any other documents required by the declaration of condominium or its bylaws as a precondition to the transfer of ownership. At time of closing Seller shall deliver to Purchaser all appropriate documents properly endorsed, and a survey or plat of the condominium unit showing the location of all improvements of such unit and further showing any parking spaces or garages that will be conveyed. Seller shall comply with all of the conditions and stipulations of the Illinois Condominium Property Act, as amended, as may be applicable.

3.14. Seller shall furnish an owner's title insurance policy in the amount of the purchase price and a Torrens Certificate of Title (if in Torrens and then applicable) showing good and merchantable title, and execute and deliver, or cause to be executed and delivered to Purchaser a proper instrument of conveyance.

3.15. Auctioneer has advised Seller on the safeguarding or removal of valuables now located within the Property and the need to obtain personal property insurance through the Seller's insurance company. If property is leased, Seller agrees to advise his tenant of the foregoing.

3.16. Sellers of residential real estate must provide prospective buyers with a disclosure document as set forth in the Residential Real Property Disclosure Act (the "**Act**"). Seller agrees to comply with the disclosure requirements of the Act and will complete the form, a copy of which is attached hereto and incorporated herein by this reference, if required pursuant to the Act. A copy of the Act is attached on the back of the attached disclosure report. Seller shall comply with the Real Estate Settlement Procedures Act of 1974, as amended, and furnish all information required for compliance therewith.

3.17. Lead Paint Disclosure. Housing built before 1978 may contain lead-based paint. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. **SELLER MUST CHECK ONE OF THE FOLLOWING TWO BOXES WHICH APPLIES TO THE PROPERTY:**

☐ The Property was built **before** 1978. Seller agrees to complete and sign a Disclosure of Information on Lead Based Paint and Lead-Based Paint Hazards, which shall be provided to Seller by Auctioneer within five days after the execution of this Agreement. Seller also agrees to provide Auctioneer with records and reports in Seller's possession as set forth in said disclosure, if any.

☐ The Property was constructed **beginning in, or after,** 1978.

4. **Auctioneer Compensation and Marketing Expenses.**
    4.1. **Commission.**
        4.1.1. Seller agrees to pay Auctioneer a commission in the amount equal to: Three (3%) of the High Bid; plus the Premium if (1) if any purchaser becomes ready, willing and able to purchase the Property, regardless if said person is found by Auctioneer, Seller, or any other person; or (2) if the Property is sold, gifted, exchanged, transferred, optioned (and such option is exercised before or after the termination of this Agreement), a joint venture is contracted, or the Property is exchanged through or as a result of the service and efforts of Auctioneer, or Seller, or any other person or persons during the period of this Agreement; or (3) if the Property is sold, optioned, joint ventured, transferred or exchanged up to and including the last day of the Post-Auction Period to any person to whom the Property was submitted during the term of this Agreement, provided however the Property is residential property of four units or less and if a valid, bonafide, written listing agreement is entered into with another licensed real broker after the Termination Date, no commission or compensation shall be due and owing pursuant to the terms of this Agreement. For property which is not residential property of four units or less, if the Property is listed with another broker after the Termination Date, Seller shall be liable for only one commission, the allocation thereof to be determined by the brokers.

        4.1.2. Auctioneer will pay a two percent (2%) co-operating broker fee out of its commission to a licensed and authorized broker whose client closes on the Property.

        4.1.3. Seller will pay an additional two percent (2%) of the accepted Bid, to Auctioneer at closing if there is a licensed and authorized broker whose client closes on the Property.

        4.1.4. Auctioneer is authorized to share Auctioneer's compensation or commission with all cooperating brokers, regardless of any cooperating broker's agency relationship to Seller, Auctioneer or the Buyer.

        4.1.5. Commission due to Auctioneer shall be paid at time of execution and delivery of deed, option, lease, joint venture agreement, or installment agreement for deed, whichever occurs sooner, and Auctioneer is authorized to deduct the commission and approved expenses (if any) from the earnest money deposit at such time. If the Property closes in escrow, Auctioneer shall be made a party to each escrow agreement which shall provide that payment of Auctioneer's fees as set forth in this Agreement.

        4.1.6. If this Agreement is canceled or materially breached by Seller, Seller shall pay to Auctioneer the amount of $25,000 (the "**Cancellation Fee**"), immediately due and payable, not as a penalty, but as liquidated damages sustained by Auctioneer by Seller's acts. If Auctioneer's authority to sell the Property is revoked or the Property is withdrawn from the market during the period of Auctioneer's authority to sell hereunder, Seller shall pay Auctioneer upon such revocation or withdrawal, not as a penalty, but as liquidated damages, an amount equal to the Cancellation Fee. Seller agrees that tendering the Cancellation Fee to Auctioneer in cash or cashier's check is a condition precedent to Auctioneer canceling the auction. Notwithstanding anything contained herein to the contrary, unpaid portions of the Marketing Fee, if any, shall be payable in addition to, and due concurrently with, the Cancellation Fee. Seller agrees to reimburse Auctioneer for all costs including reasonable attorneys' fees incurred by Auctioneer to enforce the terms of this paragraph.

        4.1.7. In case there is no closing because of a default by Seller under the Real Estate Contract, Auctioneer's commission shall be immediately due and payable. Seller agrees to reimburse Auctioneer for all costs including reasonable attorneys' fees incurred by Auctioneer to enforce the terms of this paragraph.

        4.1.8. In case of default by a purchaser under the Real Estate Contract, the purchaser's earnest money shall be forfeited. THE FORFEITED EARNEST MONEY SHALL BE DISTRIBUTED EQUALLY BETWEEN AUCTIONEER AND SELLER AFTER DEDUCTING COURT COSTS AND ATTORNEYS' FEES, IF ANY, THAT ARE INCURRED TO DETERMINE THE PURCHASER DEFAULTED. Furthermore, Seller hereby authorizes Auctioneer to resell the Property at the same total purchase price and on substantially the same terms as the contract under which the original purchaser defaulted. Said authorization shall exist only during the term of this Agreement and shall not be interpreted to extend the term of this Agreement. If a dispute arises between Seller and purchaser as to whether a default had occurred, Auctioneer shall hold the earnest money and pay it out as agreed in writing by Seller and purchaser or as directed by a court of competent jurisdiction. In the event of such dispute, Seller agrees that Auctioneer may deposit the funds with the Clerk of the Circuit Court by the filing of an action in the nature of an Interpleader. The Seller agrees that Auctioneer may be reimbursed from the earnest money for all costs, including reasonable attorney's fees, related to the filing of the Interpleader and hereby agrees to indemnify and hold Auctioneer harmless from any and all claims and demands, including the payment of reasonable attorney's fees, costs and expenses arising out of such default claims and demands. If Seller defaults, earnest money, at option or Purchaser, and upon written direction by Seller and Purchaser or as directed by a Court of competent jurisdiction, shall be refunded to Purchaser, but such refunding shall not release Seller from the obligation of this Agreement.

    4.2. **Marketing Fees.**
        4.2.1. The marketing and promotional costs for the Property payable by Seller shall be the Marketing Fee defined herein. The Auctioneer shall pay any marketing and promotional costs in excess of the Marketing Fee. The Marketing Fees shall be paid in accordance with the schedule set forth below:

| Marketing Fee Due And Payable On or Before | | | Marketing Fee |
|---|---|---|---|
| Due at the closing of the sale | | | $5,000 |
| | | | |

        4.2.2. Auctioneer agrees to provide marketing and accounting reports to Seller upon Seller's request.

        4.2.3. Auctioneer reserves the right to cancel the auction or curtail the marketing of the Property if the Marketing Fee is not paid on the date or dates specified. Such non-payment, may, at Auctioneer's option, be declared a material breach of this Agreement.

5. **Miscellaneous.**
    5.1. This Agreement shall inure to the benefit of and be binding upon the heirs, representatives, successors and assignees of Seller.

    5.2. If damage to the Property by fire or other casualty prior to the closing date established by the Real Estate Contract results in damage to the Property such that either the purchaser under the Real Estate Contract or Seller may terminate the Real Estate Contract or not close the sale and purchase thereunder, then Seller shall either pay Auctioneer the compensation it would have received had the sale closed or, in the alternative, assign and transfer to Auctioneer Seller's right, title and interest in and to insurance proceeds paid or payable to Seller on account of such fire or casualty in an amount equal to the commission Auctioneer would have been paid had the transaction closed per the Real Estate Contract. Seller shall promptly notify Auctioneer in writing of any fire or other casualty. In the event the purchaser under the Real Estate Contract wishes to close on their purchase and a closing occurs, Auctioneer shall be paid its commission at closing.

    5.3. If any litigation or controversy arises out of or in connection with this Agreement between the parties hereto, the prevailing party in such litigation or controversy shall be entitled to recover from the other party or parties its reasonable costs and expenses, including without limitation reasonable attorneys' fees and costs.

    5.4. The parties agree that any disputes arising under or in connection with this Agreement must be brought in a Court of competent jurisdiction located within Cook County, Illinois, and each party to the Agreement consents to the personal jurisdiction of said Court.

    5.5. This Agreement shall be deemed to have been executed and delivered in Illinois. This Agreement and all rights and obligations hereunder, including matters of construction, validity and performance, shall be governed by the internal laws (and not the conflicts of law provisions) of the State of Illinois.

    5.6. This Agreement set forth the entire understanding between the parties relating to the transactions described herein, there being no terms, conditions, warranties or representations other than those contained herein. This Agreement may be amended only in an instrument signed by both parties hereto.

    5.7. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. The parties intend that faxed signatures and that a faxed agreement containing the signatures (original or faxed) of all parties is binding on the parties. At the request of either party, any faxed document subject to this paragraph shall be re-executed by both parties in an original form. Neither party shall raise the use of a facsimile machine as a defense to this Agreement and shall forever waive such defense.

    5.8. The parties hereto acknowledge it is illegal for either the Seller or Auctioneer to refuse to show to or sell to any person because of their race, color, religion, national origin, sex, handicap, or familial status.

    5.9. SELLER ACKNOWLEDGES THAT AUCTIONEER AND/OR ITS AGENTS CANNOT ACCURATELY PREDICT THE PRICE THE PROPERTY WILL BRING AT AUCTION AND SELLER FURTHER ACKNOWLEDGES THAT THE AUCTIONEER AND/OR ITS AGENTS HAVE NOT MADE ANY SUCH ASSURANCES OR PREDICTIONS OF PRICE TO SELLER OR SELLER'S AGENTS.

    5.10. Seller and Auctioneer agree that they have had the opportunity to review this Agreement and have had an opportunity to be advised by legal counsel as to its contents, requirements and liabilities, and have signed this Agreement and fully understand their respective rights, responsibilities, and obligations as set forth herein.

    5.11. This Agreement may not be assigned, in whole or in part, by either party without the prior written consent from the other party.

    5.12. The recitals set forth above are incorporated herein by this reference.

    5.13. The invalidity of any covenant, grant, condition or provision of this Agreement shall not impair or affect in any manner the validity, enforceability or effect of the remainder of the Agreement.

IN WITNESS WHEREOF, the parties hereto have caused their hand, or their duly authorized agent to set their hand, to this Agreement on the day and year set forth below.

**AUCTIONEER:**

RICK LEVIN & ASSOCIATES, INC.

BY:_____            _____DATE

**SELLER:**

BY:_____            _____
    David Leibowitz,Trustee of the Thomas Estate                    DATE

**EXHIBITS:**